## George M. Creswell and Eli Aulthouse, Supervisors of Eden Township, v. Robert Montgomery, Appellant.

*Road law—Lancaster county—Collection of tax by supervisors or collectors—Acts of April 15, 1834, February 28, 1835, and April 11, 1848.*

The provisions of the Act of April 15, 1834, P. L. 537, authorizing supervisors to collect road taxes was not repealed as to Lancaster county by the Act of February 28, 1835, P. L. 45, therefore supervisors in Lancaster county may either collect the road taxes themselves without issuing a warrant, or they may by warrant authorize their collection by the tax collector.

The Act of April 11, 1848, P. L. 517, gives to the collector, after the

expiration of his warrant, full right and power to sue for the due and unpaid taxes for which he has not been exonerated, and to recover the same with interest thereon as other debts of like amount are by law recoverable.

*Road law—Road taxes—Right to work out road taxes.*

It is not in the power of a taxpayer to name the time when or to select the place where it will be convenient for him to exercise the privilege, given to him under the statute, of working out his tax.  This is the province of the supervisors, who, in the interest of the people at large, are given charge of the public highways.

Argued Nov. 13, 1899.  Appeal, No. 189, Oct. T., 1898, by defendant, from judgment of C. P. Lancaster Co., Oct. T., 1894, No. 53, on verdict for plaintiffs.  Before Rice, P. J., Beaver, Orlady, W. W. Porter, W. D. Porter and Beeber, JJ.  Affirmed.  Opinion by Orlady, J.

Appeal from judgment of justice of the peace.  Before Livingston, P. J.

It appears from the record that this was an appeal by defendant .from the judgment of a justice of the peace, in an action for the collection of road taxes laid in January, 1894.  The terms of office of the supervisors expired in March, 1894, and they brought the suit in May, 1894.

Other facts appear in the opinion of the court.

The trial court charged in part as follows:

This is an action that comes here on an appeal from a justice of the peace.  It is an action brought to recover the road tax claimed to be due and owing by Mr. Robert Montgomery to the township of Eden, in which he lives, for the purpose of recovering that road tax which has not yet, as admitted by both sides, been paid.  Now, should it be paid?  Does the evidence show you there is any reason why it should not be paid?  Supervisors have the authority to say when and where they shall work, and not the taxpayers themselves.  They are to give notice by advertisement or otherwise to the taxpayers to attend at such times and places as the supervisors may direct, so as to give such persons a full opportunity to work out their road taxes.  The whole power here is in the hands of the supervisors.

[But suppose the defendant or taxpayer says, it does not suit me to work now; I will do it some other time.  He gets

notice and declines, and so on, until the roads are all made, and the time for making roads is ended, as appears to have been the case here; it froze up and they could not go on any further. Then the taxpayer turns around and says, " I did not get an opportunity to pay my taxes by working, and I am not going to pay it." Would that be any reason for his failure to pay, or his refusal to pay, after the notice had been served on him and he has declined or refused to work at the time he was notified?] [10]

[I am somewhat doubtful to know exactly what course to follow in this case. There seems to be a hairbreadth difference between the two courts, but we are now obliged to take our law in cases of this kind with reference to roads, and so forth, from the Superior Court, and we are governed now by what it says with reference to roads and the collection of road taxes. But in a late case, the last case decided by any court that I know, Ferguson v. Moore, 5 Pa. Superior Ct. 353, it says, the decision being made by Judge BEAVER : " The right to work out road tax as provided by the act of April 5, 1834, which right is distinctly reserved by the act of June 25, 1885, ex empts the tax so worked out from collection. But upon failure to make a contract for working out such a tax, the taxes levied upon the citizen failing to make the contract are payable in money, and are collectible as other debts of a like character.] [9]

Defendant's points and the answers thereto were as follows :

[1. Under the evidence the verdict of the jury should be for the defendant. *Answer :* The first point presented, that under the evidence your verdict should be for the defendant, we refuse to answer in the affirmative, and say that is not the case.] [1]

[2. This is an appeal from the judgment of a justice of the peace, and the claim in suit was not cognizable before a justice, and, therefore, no jurisdiction attaches thereto in the appeal in court. *Answer :* We decline to answer that in the affirmative.] [2]

[3. If the jury believe that the defendant, Robert Montgomery, did not have full opportunity to work out his road tax, although notice may have been given him to do so, then their verdict must be in favor of the defendant. *Answer :* If he did

not have an opportunity, by reason of the conduct of the supervisor, then he would be entitled to a verdict in his favor; but if the supervisor gave him an opportunity, and he at that time refused, and then made no application himself to the supervisor after that, after the opportunity, and the supervisor asked him again in November, and he was estopped by the weather from doing it, then he would not be entitled.] [3]

[4. If the jury believe that in the latter part of June, at the time Creswell called upon Montgomery, they both agreed to postpone working upon the roads until after harvest, then their verdict should be in favor of the defendant, as no other opportunity was accorded defendant to work out his taxes. *Answer :* They had no right, no law to make such an agreement. The supervisor is bound, by law, to keep the roads in good order and repair. Making a contract that the roads should not be repaired at a certain time, which would prevent them from working on the road, would not be in accordance with the law. The supervisor is bound to keep his roads in repair, and if the farmers or taxpayers, do not assist in the work, he must make his roads and keep them in repair, or he will be returned to court, and then he, by his neglect, would be liable for damages for negligence. So we answer that in the negative.] [4]

[5. The right to work out his road taxes should have been given plaintiffs in August, or in the fall, after harvest time. To confine his opportunity to the months prior to August would operate as a practical denial of the privilege. *Answer :* That would depend. If we answer that in the affirmative, it would make it depend upon the weather. If the weather washed out the road, as it appeared here, then he could not call upon anybody to assist in making the road until after harvest. It is but a short time, I think, perhaps within a year, that Salisbury township had a large amount of damage to pay because the supervisor did not perform his duty at that time, but that is neither here nor there. If the township does not keep its roads in good repair, or the supervisor for it, if the supervisor fails to make his road, whether in harvest or Christmas, it makes no difference. He is bound to keep his roads in good repair or the township must pay. So you cannot blame the supervisor in asking anybody to work on the road until after harvest. If they want to work out their taxes they must do

it when the supervisor calls on them. If they fail to do that, they are obliged to pay it like other debts.] [5]

[6. The plaintiffs are bound to show that they gave the defendant particular times and places to work out his road taxes, which they have not done in this case. *Answer:* We say to you just as we said before, they are bound to give him notice of particular times and places where this work is to be done, and if the parties fail to do that, refuse to do it at the time, say they will do it some other time, then it is their duty to ask, as well as the duty of the supervisor, to give an opportunity to work out the tax.] [6]

Verdict and judgment for plaintiffs for $49.15. Defendant appealed.

*Errors assigned* among others were (1–6, 9, 10) above instructions, reciting same.

*B. F. Davis*, for appellant.—A warrant is the basis of all proceedings to collect road taxes: Act of April 15, 1834, sec. 35, P. L. 537; Act of March 29, 1860, P. L. 337, sec. 1; Stephens v. Wilkins, 6 Pa. 260; Hilbish v. Huver, 58 Pa. 93; Pearce v. Torrance, 2 Grant, 82; Kitchen v. Smith, 101 Pa. 452; Camden v. Allen, 26 N. J. L. 398.

Ferguson v. Moore, 5 Pa. Superior Ct. 353, has no bearing upon the general road acts.

*W. U. Hensel*, for appellees.—Under the Act of April 15, 1834, P. L. 537, it was the duty of the supervisors to collect the road tax in this case, and this was not altered by the Act of June 25, 1885, P. L. 187, Kemmerer v. Foster Twp, 120 Pa. 153.

Supervisors may either collect taxes or permit the tax collector to do so: Magill v. Hellyer, 2 Pa. Dist. Rep. 644.

The supervisor's duplicate is his warrant, but when he is out of office he cannot make a distress, but must bring suit.

The supervisors have discretion when their taxes are to be worked out: Com. v. Colley Twp., 29 Pa. 121; Utt v. Yocum, 8 Luzerne Leg. Reg. 277; Coxe v. Sweeney, 10 Pa. C. C. 289; Williams v. Wright, 6 Pa. C. C. 497.

OPINION BY ORLADY, J., March 21, 1900.

The plaintiffs brought suit before a justice of the peace to

recover from the defendant the amount of unpaid road taxes which had been regularly assessed against him. On appeal to the court of common pleas, the defendant interposed two defenses: First, that the justice of the peace did not have jurisdiction; second, that the defendant did not have an opportunity, as required by the law, to work out the amount of the tax.

The Act of April 15, 1834, P. L. 537, provided for the election and defined the duties of a township treasurer. By the Act of February 28, 1835, P. L. 45, section 8, the 81st section of the Act of 1834 was repealed so far as it required the election of a township treasurer, except in nine named counties, of which Lancaster is not one. After this latter enactment the duty of supervisors in the counties not named in the act of 1835, was fixed by the 35th section of the former act, which authorized them " to collect the township rates and levies by them respectively laid." When the supervisor collects the taxes under this authority it is not necessary for him to issue a warrant to himself for the collection thereof, as he has the duplicate for his authority while he is in office, being himself the collector of that tax.

The Act of June 25, 1885, P. L. 187, did not affect the authority of a supervisor to collect the money for road taxes in person. It is a matter in the discretion of the supervisors to place the taxes in the hands of the collector with their warrant for collection, or " the same may be collected by the supervisors or road commissioners as heretofore."

The Act of April 11, 1848, P. L. 517, sec. 3, gives to the collector, after the expiration of his warrant, full right and power to sue for the due and unpaid taxes for which he has not been exonerated, and to recover the same with interest thereon as other debts of like amount are by law recoverable.

The verdict establishes that the taxes were unpaid; that the term of the supervisors had expired; that they had not been exonerated; that the defendant had been given an opportunity to work out his tax and had declined to do so for a reason personal to himself. His liability had never been discharged, and it was not in his power to name the time when, or to select the place where, it would be convenient for him to exercise the privilege, given to him under the statute, of working out his tax, This is the province of the supervisors who, in the interest of

the people at large, are given charge of the public highways: McKee v. Taggart, 103 Pa. 431; Kemmerer v. Foster Twp., 120 Pa. 153; Ferguson v. Moore, 5 Pa. Superior Ct. 353.

The justice had jurisdiction, and the disputed facts were fairly submitted to the jury. The assignments of error are overruled and the judgment is affirmed.